IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MILLENNIUM MULTIPLE EMPLOYER | ) | Case No. 10-13528 |
| WELFARE BENEFIT PLAN, | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | Adversary. No. |
| CLAUDE YOUNG, et al | ) | 10-01176 |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE MILLENNIUM MULTIPLE | ) | |
| EMPLOYER WELFARE BENEFIT PLAN, | ) | |
| *et al*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST ADVERSARY PLAINTIFF LINCOM, LLC
WITH RESPECT TO DEBTOR'S
<u>COUNTERCLAIMS FOR INDEMNIFICATION – OPENING BRIEF</u>**

# Table of Contents

INTRODUCTION ................................................................................................ 1

UNDISPUTED FACTS CONCERNING THE MILLENNIUM PLAN
AND ITS OPERATIONS, LINCOM AND THE COTTAM PLAINTIFFS ..................... 2

    I.     The Millennium Plan and its Assets and Benefits ............................... 2

    II.    Applicable Provisions of the Millennium Plan's Governing Documents ........... 3

    III.   Administration of the Millennium Plan:  The Plan Committee, Trustee and
         Third-Party Administrator ................................................................ 4

    IV.   Relevant Portions of the Millennium Plan's Adoption Agreement..................... 6

    V.    Relevant Facts Relating to the Cottam Plaintiffs ................................ 7

ARGUMENT .................................................................................................... 13

    I.     The Indemnification Provision Requires Lincom to Indemnify the Plan
         Committee, RBT and SecurePlan for Their Costs of Defending the Young
         Action................................................................................................ 14

    II.    The Indemnification Provision Extends to the Millennium Plan's Costs to
         Defend the Cottam Plaintiffs' Claims Under the Federal Common Law of
         Agency ............................................................................................. 15

    III.   The Millennium Plan is Entitled to Indemnification For Payments
         It Has Made to RBT and SecurePlan Under the Doctrine of Equitable
         Subrogation ...................................................................................... 18

CONCLUSION.................................................................................................. 20

# Table of Authorities

## Cases

*Allstate Insurance Co. v. Mazzola,*
  175 F.3d 255, 258 (2d Cir. 1999) ........................................................................... 17, 18

*Anderson v. International Union, United Plant Guard Workers of America,*
  150 F.3d 590 (6th Cir. 1998) ........................................................................... 16

*In re: Kizzee-Jordan,*
  626 F.3d 239, 245 (5th Cir. 2010) ........................................................................... 17

*In re: Successor Trust Committee of Permian Distributing, Inc., Employees' Profit
  Sharing Plan and Trust,*
  735 F. Supp. 708, 717 (W.D. Tex. 1990) ........................................................................... 15

*Sereboff v. Mid Atlantic Medical Services, Inc.,*
  547 U.S. 356 (2006) ........................................................................... 17

*Stack v. American Medical International, Inc.,*
  2005 WL 661934, *4  (D. Neb. 2005) ........................................................................... 14, 16

*United States Fidelity and Guaranty Co. v. Federated Rural Electric Ins. Corp.,*
  37 P.3d 828, 831-832 (Okla. 2001) ........................................................................... 17

*Woods v. Quest Information Technologies,*
  334 F. Supp. 2d 1187 (D. Neb. 2004) ........................................................................... 15, 16

## Statutes

29 U.S.C. § 1104(a)(1)(D) ........................................................................... 3

ERISA § 404(a)(1)(D) ........................................................................... 3

Tex. R. Civ. P. 92) ........................................................................... 12

## Other Authorities

Internal Revenue Code § 419A(f)(6) ........................................................................... 3

## <u>INTRODUCTION</u>{ TC "INTRODUCTION" \f C \l "1" **}**

The Millennium Multiple Employer Welfare Benefit Plan ("Debtor", the "Millennium Plan" or the "Plan") respectfully moves the Court for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7056 granting it partial summary judgment against *Young* case adversary plaintiff Lincom, LLC ("Lincom") with respect to Debtor's counterclaim for indemnification.

Debtor brings this Motion to establish the right of the Millennium Plan to enforce an indemnity provision against tort litigants who entered into Adoption Agreements with the Millennium Plan.  In order to preserve its assets, this particular Motion is brought as to only one Plan adopting employer, and to establish liability only.  The Debtor has yet to allocate the defense costs and fees for which the Millennium Plan is entitled to indemnification among the various Covered Employers, and will therefore seek an award for a specific amount of damages against Lincom at a later date.  However, once the legal principle that the Debtor is entitled to indemnification is established, the Debtor hopes to be able to negotiate a comprehensive settlement with the other current and former Millennium Plan Covered Employers who are parties to the pending tort actions against Debtor.

In support of its Motion, Debtor states the following:

## UNDISPUTED FACTS CONCERNING THE MILLENNIUM PLAN AND ITS OPERATIONS, LINCOM AND THE COTTAM PLAINTIFFS

{ TC "UNDISPUTED FACTS CONCERNING THE MILLENNIUM PLAN AND ITS OPERATIONS, LINCOM AND THE COTTAM PLAINTIFFS
" \f C \l "1" }

**I.        The Millennium Plan and its Assets and Benefits**

{ TC "I.        The Millennium Plan and its Assets and Benefits" \f C \l "2" }

1.       Debtor is an ERISA-governed employee welfare benefit plan that provides life benefits and death benefits for Eligible Employees, who also are known as Millennium Plan "participants".  February 18, 2011 Findings of Fact and Conclusions of Law Relating to Order Denying Joint Motion for Approval of Settlement ("February 18, 2011 Order") [DK 937], p. 2.

2.       Millennium Plan benefits are funded by contributions made to the Plan by Covered Employers who elect to adopt the Plan.  The Millennium Plan uses those contributions to purchase life insurance policies on the lives of participants for whom the contributions are made.  *Id.*

3.       The life insurance policies are owned by the Millennium Plan's directed trustee, Republic Bank and Trust Company ("RBT"), which holds the policies in trust pursuant to ERISA's requirements.  *Id.* at 2-3.  The Millennium Plan is the beneficiary of all of the policies, and "funds the payment of benefits, and its operations, by borrowing against the cash surrender values of the policies it holds."  *Id.* at 3.

## II.    Applicable Provisions of the Millennium Plan's Governing Documents{

TC "II.    Applicable Provisions of the Millennium Plan's Governing

Documents" \f C \l "2" }

4.    ERISA requires that an employee benefit plan be administered by a

named fiduciary in the interests of all of the plan's participants and beneficiaries,

and in accordance with the documents and instruments governing the plan.

ERISA § 404(a)(1)(D){ TA \l "ERISA § 404(a)(1)(D)" \s "ERISA § 404(a)(1)(D)" \c

2 }, 29 U.S.C. § 1104(a)(1)(D){ TA \l "29 U.S.C. § 1104(a)(1)(D)" \s "29 U.S.C. §

1104(a)(1)(D)" \c 2 }.

5.    The Millennium Plan is governed by the Master Plan, the Trust

Agreement and the Adoption Agreement.  February 18, 2011 Order, p.  3.[1]

6.    Under the terms of the Millennium Plan documents and as required

by Internal Revenue Code § 419A(f)(6){ TA \l "Internal Revenue Code

§ 419A(f)(6)" \s "Internal Revenue Code § 419A(f)(6)" \c 3 },  "…the life insurance

policies held by the Plan are held for the collective benefit of all participants in the

Plan.  An individual participant is neither the legal owner of the policy insuring

that participant's life (as noted, the Trustee is the legal owner), nor the beneficiary

of the policy (also as noted, the Plan is the beneficiary) and the participant has no

---

[1] The Court admitted these documents into evidence at the hearings held on the
parties' Joint Motion for Approval of Settlement.  *Id*. at p. 3.  In order to curtail the
length of their exhibits, Debtor is not resubmitting these documents with this
Motion, but instead relies on those previously admitted into evidence.

ownership interest in the policy on his or her life.  The policies are pooled for the benefit of all participants and their beneficiaries."  *Id.*

7.      Under the terms of the Millennium Plan documents, the insurance policies, including earnings thereon, are "plan assets".  *See, e.g.*, Trust Agreement ¶ 3.02; Master Plan ¶ 2.08.

8.      "The Plan Documents contain no provision for payment to any participant of the cash surrender value of the policy on the participant's life."  February 18, 2011 Order, p. 11.

9.      Moreover, the Plan Documents prohibit reversions of Plan assets to or for the benefit of Covered Employers.  Master Plan ¶ 3.06.a.vi; Adoption Agreement ¶ 4.E.v.  *See also, e.g.*, Master Plan ¶¶ 5.03.c  and 5.03.g.

**III.   Administration of the Millennium Plan:  The Plan Committee, Trustee and Third-Party Administrator { TC "III.      Administration of the Millennium Plan:  The Plan Committee, Trustee and Third-Party Administrator " \f C \l "2" }**

10.      The Master Plan names the Plan Committee as a fiduciary and the governing body of the Millennium Plan that also is responsible for interpreting the terms of the Plan in its sole and absolute discretion.  *See, e.g*., Master Plan ¶ 1.05 (definition of "Committee"), ¶ 1.14 (defining "fiduciary" to include the Plan Committee), ¶ 2.01 (providing that all Plan Assets are administered by the Plan's Trustee in accordance with the Master Plan and Trust at the direction of the Plan Committee).

11.     Plaintiffs admit that the Plan Committee "actively control[][s]" the Plan.  Plaintiffs' Ninth Amended Petition p. 50, ¶ 5.48 (second sentence). Relevant excerpts from Plaintiffs' Ninth Amended Petition are attached as Exhibit 1 to Affidavit of Katherine S. Kamen (the "Kamen Aff.") filed herewith.

12.     Under the terms of the Master Plan, certain administrative functions are to be undertaken by a third-party administrator ("TPA").  Master Plan § 5.01.a.

13.     Effective July 1, 2005, the Millennium Plan (and its sponsor) retained SecurePlan Administrators, LLC as its TPA.  Administrative Services Agreement, Millennium Multiple Employer Welfare Benefit Plan ("ASA"); Affidavit of Jonathan Cocks ("Cocks Aff."), Ex. 1; [2]  Ninth Amended Petition p. 53, ¶ 4.51 ( second sentence) (alleging that SecurePlan became the Plan's TPA in July 2005).

14.     As TPA, SecurePlan acts at the instruction of the Debtor, as directed by the Plan Committee.  ASA, § III.  *See also* Ninth Amended Petition ¶ 4.52 (alleging that SecurePlan and RBT are "puppet[s]" of the Plan Committee).

15.     Under the terms of the ASA, the Plan is required to indemnify SecurePlan for the costs and expenses of defending itself against claims arising out of or in connection with the performance of its duties as the Plan's TPA.  ASA, ¶ VIII.  SecurePlan also is entitled to indemnification under the terms of the Master Plan.  Master Plan ¶ 5.07.a.iii.

---

[2] Although the ASA has only an eighteen (18) month term, it has been extended by mutual agreement of the Plan Committee and SecurePlan.  *See* Cocks Aff.  ¶ 3.

16.     The Master Plan also requires that the Plan's assets be held in trust by a Trustee and administered by the Trustee at the direction of the Plan Committee and in accordance with the terms of the Master Plan and Trust Agreement.  Master Plan ¶ 2.01.

17.     RBT is the Plan's trustee, and "is a directed Trustee, which acts at the instruction of the beneficial owner [of the life insurance policies], the Debtor." March 10, 2011 Order Granting Amended Joint Motion for Approval of Assumption of Executory (Life Insurance Contracts) [DK 977], p. 2.

18.     The terms of the Trust Agreement generally require the Plan to indemnify RBT for its defense costs and expenses associated with actions that challenge the performance of its duties as Trustee.  Trust Agreement ¶ 10.01(c).

**IV.    Relevant Portions of the Millennium Plan's Adoption Agreement{ TC "IV.    Relevant Portions of the Millennium Plan's Adoption Agreement" \f C \l "2" }**

19.     The Millennium Plan's Adoption Agreement is a contract between each Covered Employer and the Millennium Plan that sets forth the terms and conditions pursuant to which the Covered Employer adopts the Millennium Plan. Adoption Agreement, p. 1, introductory paragraphs.  Each Adoption Agreement must be signed by an authorized representative of the Covered Employer.

20.     By signing the Adoption Agreement, the Covered Employer acknowledges and agrees that it is bound by the Millennium Plan's terms, Adoption Agreement ¶ 4.A, and agrees to make specified contributions thereto.

21.    Both the Master Plan and the Adoption Agreement provide that an Employer will cease to be a Covered Employer if it stops making contributions to the Plan or is otherwise deemed by the TPA to be in default of the Adoption Agreement. Adoption Agreement, ¶ 4.C.i; Master Plan, ¶¶ 3.06.a.x, 3.06.b, 3.06.d.

22.    The Adoption Agreement also contains the following indemnity provision (the "Indemnification Provision"):

> By executing the Adoption Agreement, each Employer hereby agrees to defend, indemnify and hold the Committee, the Third Party Administrator, the Underwriter, and the Trustee, and each of them harmless from and against any liability, claim, action, suit, loss or costs or expense, including without limitation, attorneys' fees and costs of court, arising from or in connection with any of the following matters:  (a) following or carrying out any directions given pursuant to the terms of the Plan or Trust; (b) carrying out or executing any of its responsibilities performed pursuant to the direction of any party; (c) the payment of any tax due with respect to or levied upon the Trust by any federal, local, or state taxing authority, to the extent assets held by the Trust are insufficient to pay such tax; or (d) any action or omission of the Committee, the Third Party Administrator, the Underwriter or the Trustee performed in good faith in connection with maintenance or administration of the Plan or Trust, provided that each is authorized or permitted to perform or omit such act under the Plan or Trust. The foregoing indemnification shall extend to any Employee, officer, director or agent of the Committee, the Third Party Administrator, the Underwriter, or Trustee.

Adoption Agreement ¶ 7.

## V.    Relevant Facts Relating to the Cottam Plaintiffs{ TC "V.    Relevant Facts Relating to the Cottam Plaintiffs" \f C \l "2" }

23.    Plaintiff Lincom is a Texas corporation which, at the time of the acts complained of in *Young*, was owned by *Young* plaintiffs Linda Cottam and John Cottam (collectively referred to as the "Cottams"), both of whom are Texas residents.  Ninth Amended Petition ¶ 2.13.

24.     Plaintiff Kevin Barba ("Barba"), who is a Florida resident, is Mrs. Cottam's brother and at the time of the acts complained of in *Young,* was an employee of Lincom.  Ninth Amended Petition ¶ 2.14; Lincom Adoption Agreement (Kamen Aff. Ex. 2), pp. 5, 6.

25.     In or about 2001, the Cottams, Barba and Lincom (collectively, the "Cottam Plaintiffs") began participating in the American Benefits Plan and Trust ("ABT Plan").  Ninth Amended Petition, p. 85.  In connection with that participation, the Guardian Life Insurance Company of America ("Guardian") issued to the ABT Plan trustee, Fifth Third Bank ("Fifth Third"), three insurance policies on the lives of each of the Cottams and one policy on the life of Barba. The cover and policy data pages from these policies are attached as Exhibit 3 to the Kamen Aff.  S*ee also* October 10, 2006 letter from RBT to the Cottams (transmitting to them all seven original life insurance policies)(Kamen Aff. Ex. 4).

26.     After the Cottams and Barba started participating in the ABT Plan, they were informed by their insurance agent that the ABT Plan was dissolving and they decided to transfer to the Millennium Plan.  Ninth Amended Petition, p. 85. Thus, on or about November 12, 2003, Linda Cottam executed a Millennium Plan Adoption Agreement on behalf of Lincom, and the Cottams signed  forms directing Fifth Third to transfer the then-effective Guardian policies issued on their lives to the Millennium Plan.   Kamen Aff. Exs. 2 and 5.

27.     Fifth Third transferred to RBT one Guardian insurance policy on each of the Cottams' lives, but did not transfer the other policies on the Cottams'

lives or the policy on Barba's life.    *See* December 30, 2005, letter from RBT to Linda Cottam (Kamen Aff. Ex. 6); *see also* Ninth Amended Petition p. 86. Lincom subsequently decided to establish its own 419(e) plan to own the policies on July 14, 2006.    Kamen Aff. Ex. 7.

28.    Despite repeated requests by RBT over several years, the Cottams did not sign the forms required to change the ownership of the Cottam policies from the Millennium Plan to the Lincom Plan until October 6, 2008.  Kamen Aff. Ex.8.  The Millennium Plan has not held any insurance policies relating to the Cottams since the end of 2008.  Kamen Aff. Ex. 9.


A.  The Cottam Plaintitffs Join the *Young* Lawsuit

29.     On January 9, 2009, the Cottam Plaintiffs, became plaintiffs in the *Young* lawsuit, when plaintiffs filed their Second Amended Petition.  *See* Excerpts of Second Amended Petition (Kamen Aff. Ex. 10).

30.    On May 21, 2009, the Cottams sent a letter to the Millennium Plan demanding that the Plan "void" their Plan participation and return all of "their" Plan assets (of which there were none since they had all been transferred to the Lincom Plan) to them.   Kamen Aff. Ex. 11.

31.    After the Plan Committee indicated that it could not honor the Cottams' request (since, among other reasons, it had already transferred the policies it had received to the Lincom Plan), on July 17, 2009, the Cottam Plaintiffs, together with the other *Young* plaintiffs, amended their pleading to

include the three voting Plan Committee members as defendants. *See* Excerpts of Fourth Amended Petition (Kamen Aff. Ex. 12).[3]

32.    As plaintiffs in the *Young* case, the Cottam Plaintiffs have taken discovery from the Millennium Plan, the Plan Committee, RBT and SecurePlan, including many depositions. Kamen Aff. ¶¶ 9-10. In addition, the Cottam Plaintiffs have served written discovery, and have responded to written discovery served on them by the Plan and Mr. Cocks. *Id.* At no time in any of the discovery did the Cottams Plaintiffs state that they were not suing these defendants because the Millennium Plan had transferred the policies to the Lincom Plan, nor did the Cottam Plaintiffs object to the written discovery requests on that basis. *Id.*

33.    Even though they were then no longer Participants and had no legal relationship to the Millennium Plan, the Cottam Plaintiffs also joined the other *Young* plaintiffs in filing discovery and dispositive motions against the Millennium Plan and its fiduciaries, including motions asking the Texas state court (1) to appoint a receiver to manage the Plan's assets, (2) to appoint additional members to the Plan Committee, and (3) to enjoin RBT from surrendering for cash insurance policies on the lives of Plan participants whose employers stopped making required Plan contributions. Excerpts attached as Kamen Aff. Ex. 14.

---

[3] On May 5, 2010, the Cottam Plaintiffs, together with the other plaintiffs in *Young* and plaintiffs in three other state tort actions brought by their attorneys made a demand on RBT for the return of all contributions made by plaintiffs in all actions to the Millennium Plan. Kamen Aff. Ex. 13.

34.    These actions by the Cottam Plaintiffs and the other plaintiffs in the state tort actions brought by their attorneys have forced not only the Millennium Plan, but also the Plan Committee members, RBT and SecurePlan, to incur significant legal fees and expenses.

35.    Pursuant to their rights under Trust Agreement and ASA as well as the Master Plan, RBT and SecurePlan respectively have demanded that the Millennium Plan indemnify them for their legal fees and expenses caused by the claims made by the Cottam Plaintiffs and others, and the Plan has done so, paying approximately $ 832,000 to date.   *See* Cocks Aff. ¶ 7.

B.    After a Year, the Cottam Plaintiffs Change Course and Represent That They are Not Suing the Millennium Plan and its Fiduciaries

36.    After more than a year of participating in the *Young* lawsuit as plaintiffs, including in discovery and in motions described above, the Cottam Plaintiffs abruptly decided  that they actually were not suing the Millennium Plan, the Plan Committee, RBT or SecurePlan.   This action was precipitated by the Plan's service of a hearing subpoena on Mrs. Cottam requiring her to testify concerning her motion to appoint a receiver for the Plan.  The Millennium Plan, Plan Committee and the Cottam Plaintiffs subsequently entered into a "Rule 11" Agreement under the Texas Rules of Civil Procedure (essentially an enforceable

11

stipulation) to the effect that the Cottam Plaintiffs were asserting no claims against these defendants. Kamen Aff. Ex. 15.

37.    Despite the Rule 11 stipulation, on February 10, 2010, the Cottam Plaintiffs joined the other *Young* plaintiffs in filing a motion for summary judgment against the Millennium Plan.   Excerpts attached at Kamen Aff. Ex. 16. On May 28, 2010, the Cottam Plaintiffs joined the newly filed Ninth Amended Petition in *Young*, accusing the Millennium Plan and its fiduciaries of, among other things, conspiracy and fraud, *e.g*., pp. 4-5, and complain about the refusal to "void" their Plan participation and return Plan assets to them.  *See, e.g., id.* at pp. 27-29, 49-51 and 53-56.   The Cottam Plaintiffs have now filed Proofs of Claim in the Chapter 11 proceeding asserting millions of dollars worth of claims against the Plan.  *See* Claim Nos. 695-698.

38.    Prior to the bankruptcy filing, the Millennium Plan filed counterclaims against all of the *Young* plaintiffs, including Lincom and the Cottam Plaintiffs.  *See* Defendants The Millennium Multiple Employer Welfare Benefit Plan and Jonathan Cocks' Answer and Counterclaim to Plaintiffs' Eighth Amended Petition, pp 5-10.  Kamen Aff. Ex. 17.[4] In this filing, the Millennium Plan asserted a claim for contractual indemnification under the Adoption Agreement and "under all applicable provisions of the Plan Documents" as well as for claims for violating

---

[4] Under the Texas Rules of Civil Procedure, this Answer and Counterclaim applies with equal force and effect to the Ninth Amended Petition.  See Tex. R. Civ. P. 92{ TA \l "Tex. R. Civ. P. 92" \s "Tex. R. Civ. P. 92" \c 6 }.

the Texas Deceptive Trade Practices Act.  The Plan and Mr. Cocks also brought a claim against the Cottam Plaintiffs for bringing a frivolous lawsuit.

## **ARGUMENT{** TC "ARGUMENT" \f C \l "1" **}**

The facts relating to the Cottams are unfortunately not unusual; the Millennium Plan has been sued by many plaintiffs who never completed the adoption process, many who voluntarily transferred out of the Millennium Plan with all assets attributable to them, and even someone who had apparently never even heard of the Millennium Plan.  The Cottams are also not unusual in that they signed a contract – the Adoption Agreement – that included an indemnification provision to discourage frivolous lawsuits by requiring Covered Employers to indemnify certain defendants and their agents against fees and costs incurred in lawsuits brought by the Covered Employers.  The question posed by this Motion is whether the Covered Employers should be held accountable for their actions and made to uphold their contractual obligations, or whether the innocent Participants of the Millennium Plan should have their assets diminished because current and former Covered Employers (or persons purporting to be such) insist on bringing claims in bad faith.

It is undisputed that Linda Cottam signed the Adoption Agreement as President of Lincom, and that she had the authority to enter into the Adoption Agreement on behalf of Lincom.   Thus, Lincom and its principals, the Cottams, are contractually bound by the terms and conditions of the Adoption Agreement,

including its indemnification provision (the "Indemnification Provision"), and the terms of the Millennium Plan itself.

**I.    The Indemnification Provision Requires Lincom to Indemnify the Plan Committee, RBT and SecurePlan for Their Costs of Defending the _Young_ Action{** TC "I.    The Indemnification Provision Requires Lincom to Indemnify the Plan Committee, RBT and SecurePlan for Their Costs of Defending the Young Action" \f C \l "2" **}**

On its face, the Indemnification Provision requires Lincom, as signatory to the Adoption Agreement, to indemnify RBT, SecurePlan, and the Plan Committee: (1) for taking actions required or permitted by the terms of the Plan or Trust: (2) for carrying out their responsibilities in connection with the Plan or Trust; and (3) for taking permitted actions in good faith pursuant to the maintenance or administration of the Plan or Trust.

Here, it is beyond dispute that the claims asserted by the Cottam Plaintiffs against the Plan Committee, RBT and SecurePlan fall into one or more of these three categories.   All of the challenged acts affecting the Cottams Plaintiffs were taken by the Plan Committee, RBT or SecurePlan pursuant to their responsibilities under the Plan Documents, and in an effort to administer the Millennium Plan in the exclusive interests of all of the Plan participants and beneficiaries.  Indeed, at least with respect to Lincom and the Cottams, these defendants only took actions – accepting the policies from the ABT Plan and then transferring them to the Lincom Plan -- _requested by_ the Cottams themselves.

Thus, there is no dispute that Lincom is legally required to indemnify the Plan Committee, RBT and SecurePlan for expenses and fees incurred defending the claims brought by the Cottam Plaintiffs in bad faith in *Young*.

## II.   The Indemnification Provision Extends to the Millennium Plan's Costs to Defend the Cottam Plaintiffs' Claims Under the Federal Common Law of Agency**{** TC "II.     The Indemnification Provision Extends to the Millennium Plan's Costs to Defend the Cottam Plaintiffs' Claims Under the Federal Common Law of Agency" \f C \l "2" **}**

The more difficult issue is whether the Indemnification Provision extends to fees incurred by the Millennium Plan itself since it is not specifically named in the Indemnification Provision.  However, the Indemnification Provision explicitly extends to "agents" of the Plan Committee in order to protect any Person that is sued because it acted at the direction of the Plan Committee.  The Millennium Plan contends that it is an agent of the Plan Committee and is thus covered by the Indemnification Provision.

As a governing plan document, the Adoption Agreement must be interpreted under federal common law bearing in mind the special nature and purpose of employee benefit plans.  *See, e.g., Stack v. American Medical International, Inc*., 2005 WL 661934, *4  (D. Neb. 2005)**{** TA \l "*Stack v. American Medical International, Inc*., 2005 WL 661934, *4  (D. Neb. 2005)" \s "Stack v. American Medical International, Inc., 2005 WL 661934, *4  (D. Neb. 2005)" \c 1 **}** ("actions under ERISA are governed by the federal common law of agency") (collecting cases from 3rd, 4th 6th and 7th Courts of Appeal that so hold); *Woods v. Quest Information Technologies,* 334 F. Supp. 2d 1187 (D. Neb. 2004)**{** TA \l

15

"*Woods v. Quest Information Technologies,* 334 F. Supp. 2d 1187 (D. Neb. 2004)"
\s "Woods v. Quest Information Technologies, 334 F. Supp. 2d 1187 (D. Neb. 2004)" \c 1
}; *In re: Successor Trust Committee of Permian Distributing, Inc., Employees'
Profit Sharing Plan and Trust,* 735 F. Supp. 708, 717 (W.D. Tex. 1990){ TA \l
"*Successor Trust Committee of Permian Distributing, Inc., Employees' Profit
Sharing Plan and Trust,* 735 F. Supp. 708, 717 (W.D. Tex. 1990)" \s "Successor
Trust Committee of Permian Distributing, Inc., Employees' Profit Sharing Plan and Trust,
735 F. Supp. 708, 717 (W.D. Tex. 1990)" \c 1 } (finding that bank trust committee's
acts were taken in their capacity as an agent for the bank).

In the case of the Millennium Plan, the Debtor believes that the Millennium
Plan is an "agent" of the Plan Committee because it only acts at the direction of
the Plan Committee. *See, e.g*., Master Plan, ¶¶ 1.05 (according to the Plan
Committee the sole and absolute discretion to interpret the Plan), 2.01(providing
that Plan Assets are to be administered at the direction of the Plan Committee).[5]
In fact, the Cottam Plaintiffs themselves describe the relationship in classic
principal/agent terms; alleging that the Plan Committee controls the Plan, and that
the Millennium Plan could not honor their "void" request, or take any other action
with respect to their participation, unless directed to do so by the Plan Committee;
for example, Lincom directed its "void" request to the Plan Committee as "the

---

[5] Moreover, as stated above, the only way in which the Millennium Plan can act is
through the actions of RBT and SecurePlan, as directed by the Plan Committee.
Therefore, any action of the Plan Committee, which is authorized by or in
accordance with the Plan documents, is legally an action of the Millennium Plan.

fiduciaries…in control of the….Plan".  Ninth Amended Petition p. 50, ¶ 5.48,

¶ 4.52; Kamen Aff. Ex. 11 (Lincom's May 21, 2009 "void" request).

In addition, while the Cottam Plaintiffs allege that the Plan Committee,

RBT and SecurePlan acted improperly, those claims are in reality claims for relief

against the Millennium Plan (and its Participants) since it has the beneficial right

to the assets sought by these plaintiffs.  *See, e.g, Stack v. American Medical*

*International, Inc*., 2005 WL 661934 at *4**{** TA \s "Stack v. American Medical

International, Inc., 2005 WL 661934, *4  (D. Neb. 2005)" **}**, where the Court observed:

> "The employee benefit plan itself is ordinarily liable for benefits payable
> under the terms of the plan and is thus the primary defendant in an action to
> enforce ERISA rights.  However, a claimant may also bring an ERISA
> action to recover benefits against plan administrators.  The proper party
> defendant in an action concerning ERISA benefits is the party that controls
> administration of the plan.  As discussed *infra*, the party that controls the
> administration of the Plan is the Pension Committee.  Relief can be granted
> against the Pension Committee as named administrator and then imputed to
> [the Plan].

*Stack* at *4 (citations omitted)**{** TA \s "Stack v. American Medical International, Inc.,

2005 WL 661934, *4  (D. Neb. 2005)" **}**.  *See also Quest* at 1195 (same)**{** TA \s

"Woods v. Quest Information Technologies, 334 F. Supp. 2d 1187 (D. Neb. 2004)" **}**;

*Anderson v. International Union, United Plant Guard Workers of America,* 150

F.3d 590 (6th Cir. 1998)**{** TA \l "*Anderson v. International Union, United Plant*

*Guard Workers of America,* 150 F.3d 590 (6th Cir. 1998)" \s "Anderson v.

International Union, United Plant Guard Workers of America, 150 F.3d 590 (6th Cir.

1998)" \c 1 **}** (holding that an ERISA plan could be bound to provide certain

benefits under common law principles of agency for benefit modifications agreed to by the plan administrator).

There are compelling equitable reasons to take that position.  Most importantly, as noted, the claims against the Millennium Plan are essentially claims against its Participants; as the Court has held, *all* of the Millennium Plan's assets are held exclusively for the benefit of the Millennium Plan.  February 18, 2011 Order, pp 2-3.  Bearing in mind the special nature and purpose of employee benefit plans, the Debtor believes that federal common law, and the principles of ERISA, should be considered by the Court in its interpretation of the Indemnification Provision, and that that can only lead to a holding that this provision was intended to protect the Millennium Plan from having to expend the Participants' money to defend claims brought in bad faith by Adopting Employers.

**III.    The Millennium Plan is Entitled to Indemnification For Payments It Has Made to RBT and SecurePlan Under the Doctrine of Equitable Subrogation**{ TC "III.        The Millennium Plan is Entitled to Indemnification For Payments It Has Made to RBT and SecurePlan Under the Doctrine of Equitable Subrogation" \f C \l "2" **}**

Even in the absence of a contractual indemnification right, the Millennium Plan has a right to indemnification from Lincom for legal costs associated with the defense of  RBT and SecurePlan under the doctrine of equitable subrogation.  *See generally Sereboff v. Mid Atlantic Medical Services, Inc*., 547 U.S. 356 (2006){ TA \l "*Sereboff v. Mid Atlantic Medical Services, Inc*., 547 U.S. 356 (2006)" \s "Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006)" \c 1 }

(recognizing that ERISA § 502(a)(1)(B) authorizes plan fiduciaries to seek equitable restitution of amounts paid on behalf of welfare plan participants).

This doctrine allows insurers to "stand in the shoes" of their insured to seek indemnification by pursuing any claims that the insured may have against third parties legally responsible for the loss.  *See, e.g., Allstate Insurance Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir. 1999){ TA \l "*Allstate Insurance Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir. 1999)" \s "Allstate Insurance Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999)" \c 1 **}**;  U*nited States Fidelity and Guaranty Co. v. Federated Rural Electric Ins. Corp*., 37 F.3d 828, 831-832 (Okla. 2001){ TA \l "U*nited States Fidelity and Guaranty Co. v. Federated Rural Electric Ins. Corp*., 37 P.3d 828, 831-832 (Okla. 2001)" \s "United States Fidelity and Guaranty Co. v. Federated Rural Electric Ins. Corp., 37 P.3d 828, 831-832 (Okla. 2001)" \c 1 **}** (both explaining doctrine of equitable subrogation).  *See also, e.g.*, *In re: Kizzee-Jordan*, 626 F.3d 239, 245 (5th Cir. 2010){ TA \l "*In re: Kizzee-Jordan*, 626 F.3d 239, 245 (5th Cir. 2010)" \s "In re: Kizzee-Jordan, 626 F.3d 239, 245 (5th Cir. 2010)" \c 1 **}** (citations omitted) (stating that Texas law recognizes equitable, contractual and statutory subrogation).  Its purpose is to require the party which has caused the damage to reimburse the insurer for payments the insurer has made. *Id*.{ TA \s "Kizzee-Jordan, 626 F.3d 239, 245 (5th Cir. 2010)" **}**

Here, the Cottam Plaintiffs through the filing of their action have forced RBT and SecurePlan to expend legal fees and costs to defend themselves against plaintiffs' multimillion dollar tort claims.   Under the express terms of the

Indemnification Provision, Lincom is required to reimburse RBT and SecurePlan for their defense costs.  Because the Millennium Plan has reimbursed RBT and SecurePlan for these amounts, the Millennium Plan is entitled under the doctrine of equitable subrogation to recover all of those amounts from Lincom.  *Allstate Insurance Co. v. Mazzola,* 175 F.3d 255 at 260{ TA \s "Allstate Insurance Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999)" } ("An insurer's right of subrogation attaches, by operation of law, upon its payment of an insured's loss")(citations omitted).  As with the Millennium Plan's direct expenses, a contrary rule would, as a practical matter, mean that the innocent Participants would be forced to spend money set aside for their exclusive benefit to defeat claims brought in bad faith by Covered Employers.   This is a perfect case for the application of *equitable* subrogation.

### **CONCLUSION**{ TC "CONCLUSION" \f C \l "1" }

For the foregoing reasons, Debtor respectfully requests that the Court enter judgment in its favor on its counterclaim for indemnification against adversary plaintiff Lincom, LLC.


Dated: June 29, 2011                              Respectfully submitted,

                                                  */s/ Katherine S. Kamen*
                                                  _____
                                                  KATHERINE S. KAMEN
                                                  *Admitted pro hac vice*
                                                  eas@groom.com
                                                  Edward A. Scallet
                                                  *Admitted pro hac vice*
                                                  eas@groom.com

20

Lars C. Golumbic
*Admitted pro hac vice*
lgolumbic@groom.com
HISHAM M. AMIN
*Admitted pro hac vice*
hamin@groom.com


Groom Law Group, Chartered
1701 Pennsylvania Avenue, N.W.
Suite 1200
Washington, D.C.  20006
Phone:  (202) 857-0620
Fax:      (202) 659-4503

Counsel for Debtor

## CERTIFICATE OF SERVICE

I hereby certify that the above-referenced document was served via the Court's Electronic Mailing System on the 29th day of June, 2011 as follows:

John Justin Johnston – jjohnson@whmlaw.net, bwalters@whmlaw.net, juliebasewell@whmlaw.net

Fred A. Leibrock - faleibrock@phillipsmurrah.com, knogle@phillipsmurrah.com, ecf@phillipsmurrah.com

Eric D. Madden on behalf of Plaintiff Diogenes Holdings, Inc. emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com, dblake@diamondmccarthy.com, blweis@diamondmccarthy.com

James R. Wyrsch - jimwyrsch@whmlaw.net, bwalters@whmlaw.net, juliebasewell@whmnlaw.net

Additionally, a true and correct copy of the foregoing was sent to the following parties in this proceeding by first class mail this 28th day of June, 2011.

Anthony L. Vitullo
Fee Smith Sharp & Vitullo LLP
Three Galleria Tower
13155 Noel Road Suite 1000
Dallas, TX 75240
(972) 980-3254
Fax : (972) 934-9200
Email: lvitullo@feesmith.com

John L. Malesovas
The Malesovas Law Firm
816 Congress Suite 1265
Austin, TX 78701
(512) 708-1777
Fax : 512-708-1779
Email: john@malesovas.com

Larry E. Kelly
5400 Bosque Blvd., Ste 301
Waco, TX 76710
254-776-5500

David A. Clark
Beirne Maynard & Parsons, LLP
1300 Post Oak Blvd, Suite 2500
Houston, TX 77056

Adria Price
Price & Associates, LLC
43 North Kringle Place
P.O. Box 100
Santa Claus, IN 47579

Jonathan Cocks
3205 Walker Drive
Richardson, TX 75082

Charles H. Barnett, III
Sara Barnett
Spragins Barnett & Cobb, PLC
PO Box 2004
312 E. Lafayette
Jackson, TN 38302-2004

Innovus Financial Solutions , LLC
22 East Bend Lane
Houston, TX 77007-7027

Robert L. Moore
Heaton & Moore, PC
100 N. Main Building
Suite 3400
Memphis, TN 38103

John David McDowell
Harwell Howard Hyne Gabbert & Manner
315 Deaderick Street, Suite 1800
Nashville, TN 37238

Dale H. Tuttle
Glassman Edwards Wade & Wyatt, PC
26 N. Second Street
Memphis, TN 38103

Robert Redding
Redding Steen & Staton, PC
464 North Parkway, Suite A
Jackson, TN 38305

Rebecca B. Howald
Manier & Herod
One Nashville Place, Suite 2200

150 Fourth Avenue North
Nashville, TN 37219

Kathleen R. Barrow
Jackson Lewis, LLP
1415 Louisiana Street, Suite 3325
Houston, TX 77002

Craig Brinker
LaToyia Watkins Pierce
Henslee Schwartz LLP
6688 N. Central Expressway
Suite 850
Dallas, TX 75206

Jerry D. Kizer, Jr.
Rainey Kizer Reviere & Bell
PO Box 1147
Jackson, TN 38302-1147

Kevin Baltz
Miller & Martin, LLP
150 Fourth Ave N.
1200 One Nashville Place
Nashville, TN 37219-2433

J. Brandon McWherter
Gilbert Russell McWherter PLC
101 North Highland
Jackson, TN 38301

Travis R. McDonough
Miller & Martin, LLP
150 Fourth Ave N.
1200 One Nashville Place
Nashville, TN 37219-2433

Alix Coulter
Harwell Howard Hyne Gabbert & Manner
315 Deaderick Street, Suite 1800
Nashville, TN 37238

*s/ Katherine S. Kamen*
_____
KATHERINE S. KAMEN