UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MILLENNIUM MULTIPLE | § | Case No. 10-13528 |
| EMPLOYER WELFARE BENEFIT | § | Chapter 11 |
| PLAN, | § | |
| | § | |
| Debtor, | § | |
| | § | |
| CLAUDE YOUNG; MIKE YOUNG; IRIS YOUNG; | § | |
| RED RIVER SANITORS,INC.; DANNY CRANFORD; | § | |
| JENNIFER FLESHNER; ACCRON, LP; RANDOLPH | § | |
| R. EVANS; JOAN EVANS; RANDOLPH R. EVANS, | § | |
| MD, PC; MARK E. WILSON; MARK E. WILSON, | § | |
| DDS, PC; LOUIS GUERRA; JOE GUERRA; | § | |
| RUDOLPH GUERA; RUDY'S FOOD PRODUCTS, | § | |
| INC.; GUERRA HOLDINGS, INC.; JOHN COTTAM; | § | |
| LINDA COTTAM; LICOM, LLC; KEVIN BARBA; | § | |
| ALAN LIPKA; EVANS, LIPKA & ASSOCIATES, INC.; | § | |
| DOGULAS KOTTAS; LOREN UNRUH; GAIL | § | |
| GAIL UNRUH; LH&G ENTERPRISES; RONALD | § | |
| SCOT WARDER; CANDACE WARDER; E.S.&D | § | |
| SERVICES, INC; PERRY M. JAYNE; CHAD JAYNE; | § | |
| ANCHOR FRAME & AXEL, INC.; KAREN TAN; | § | |
| FAMILY EARNOSE & THROAT CARE, PC; FAMILY | § | |
| EAR NOSE & THROAT SERVICES, PLLC; JERROLD | § | |
| MALAMUT; LYNNE C. MALAMUT; TODD | § | |
| BENJAMIN MALAMUT, and NATIONAL REAL | § | |
| REAL ESTATE BROKERAGE, INC., | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | Adversary No. 10-01176 |
| | § | |
| THE MILLENNIUM MULTIPLE EMPLOYER | § | |
| WELFARE BENEFIT PLAN; MILLENNIUM | § | |
| MARKETING GROUP, LLC; INNOVUS | § | |
| FINANCIAL SOLUTIONS, INC.; NORMAN | § | |
| H. BEVIN; JONATHON COCKS; KATHLEEN | § | |
| BARROW; SCOTT RIDGE; RIDGE INSURANCE, | § | |
| INC.; REPUBLIC BANK & TRUST; SECUREPLAN | § | |
| ADMINISTRATORS, LLC; MILLIMAN, INC.; | § | |
| GREGG SMITH; SMITH FINANCIAL GROUP. LLC; | § | |
| ARCHER D. BONNEMA; JACOB BONNEMA; THE | § | |
| GUARDIAN LIFE INSURANCE COMPANY OF | § | |
| AMERICA; AMERICAN UNITED LIFE INSURANCE | § | |
| COMPANY; T.R. MOORE & COMPANY, PC; | § | |
| TIMOTHY R. MOORE; AMERICAN GENERAL LIFE | § | |
| INS. CO.; DAVID H. CLINET; GREENBOOK | § | |
| FINANCIAL SERVICES, INC., now known as | § | |
| ADVANCED EQUITIES INSURANCE SERVICES, | § | |
| INC; INDIANAPOLIS LIFE INSE. CO.; BENJAMIN | § | |

| | |
|---|---|
| DANIEL KENNEDY,III; WILSHIRE-PENNINGTON | § |
| GROUP, INC; SECURITY MUTUAL LIFE | § |
| INSURANCE COMPANY OF NEW YORK; GARY L. | § |
| THORNHILL; PRIVATE CONSULTING GROUP, INC.; | § |
| MEDALIST MARKETING GROUP, LLC; | § |
| THORNHILL ASSURANCE SERVICES, INC; | § |
| MEDALIST, LLC; KATHLEEN C. PEER; WILLIAM E. | § |
| WATSON, III; JOSHUA FINANCIAL CORPORATION; | § |
| DAVID ESSMAN;  LARRY CRESS, TIMOTHY | § |
| O'ROURKE; and GLEN ARONS, | § |
| | § |
| Defendants | § |

## DEFENDANT LARRY CRESS' FIRST MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

TO THE HONORABLE COURT:

LARRY CRESS, DEFENDANT ("Cress), moves for summary judgment as follows:

1.  This motion is brought pursuant to Fed. R. Civ. P. 56(a).

### RELATED CASE

2.  This case is related to Adversary No. 10-00175, styled *Fred Westfall et al v. The Norman H. Bevan et al*.

### PARTIES

3.  Defendant and Movant, Larry Cress, is a member of the Plan Committee of Debtor (the "Committee"), The Millennium Multiple Employer Welfare Benefit Plan ("Millennium" or the "Plan"). The Plan was organized as a trust under the laws of the State of Mississippi on 1 November 2002 as an ERISA Plan with the intended qualification under IRC 419A(f)(6). [Case No. 10-13528, Dkt. #1244, art IV] The Plan was amended three times. The original Plan document and the amendments are substantially the same. A true and correct copy of the current Millennium Master Plan is attached hereto as Exhibit "A."

4.  Plaintiffs are existing or former Participants or beneficiaries in the Plan.

## SUBJECT MATTER OF MOTION[1]

5.  The subject of this motion is Plaintiff's Ninth Amended Original Petition. [Dkt. #5-18,

    19 and 20] to which Cress has filed his answer asserting multiple denials and

    affirmative defenses. (Exhibit "D")

6.  The subject matter of Plaintiffs' suit is the Plan. Plaintiffs generally contend that in 2002

    all Defendants conspired to devise a scheme to sell to plan participants high premium

    whole life insurance policies providing unreasonable profits and commissions

    respectively to the Defendant insurance companies and the Defendant insurance agents

    *vis a vie* the Plan.  As a material part of executing the scheme, Plaintiffs contend that

    Defendants fraudulently induced Plaintiffs' participation in the Plan by affirmatively

    misrepresenting to them that the Plan was an ERISA plan which qualified under IRC

    419A(f)(6). [2]  Plaintiffs further contend that Defendants knew or should have known

    that the Plan was bogus, did not have the characteristics and benefits as described in the

    Plan documents as well as directly represented by certain Defendants to Participants,

    prospective and actual. Plaintiffs also contend that Defendants committed fraud by non-

    disclosure, i.e., failing to disclose the unreasonable profits and commissions inuring to

    the benefit of the defendant insurance companies and agents, the risks of IRS audit and

---

[1] All document references herein, unless stated otherwise, are to Adversary Proceeding No. 10-01176. It appears that there are no pleadings or other state court documents in the state court case that is the subject of this Adversary Proceeding filed herein, and that the documents transferred from the U.S. Bankruptcy Court for the Northern District of Texas in both this Adversary proceeding as well as the related state case are filed in Adversary Proceeding 10-01176, although the pleadings and other related court documents appear to be incomplete. Movant's attorney sought assistance from various deputy clerks and staff members of the Court, and they were unable to locate in the adversary proceedings all pleadings and filings in the state court cases which were removed from the Texas District Court to the United States Bankruptcy Court for the Northern District of Texas and ultimately transferred to this court.
[2] If qualified and subject to certain reporting requirements, IRC 419A(f)(6) essentially allows a taxpayer to deduct the Plan insurance premiums as ordinary expenses on their income tax returns, allows certain tax free withdrawals, and provides for other tax benefits.

denial, the risks of forfeiture, the actual characteristics and nature of the Plan and other

risks.  (Ex. "A," ¶6.05) Plaintiffs additionally contend the Sponsor, Committee

members, Trustee and Third party Administrator, individually and collectively,

breached various fiduciary duties. Finally, Plaintiffs contend that the Defendants

committed various other torts, which combined with Plaintiffs' other claims, were made

with the goal of manipulating the Plan for Defendants' individual and joint benefit.

[Dkt. #5-18 and 20, III-V, Counts I and II]

## PLAINTIFFS' CAUSES OF ACTION

### As to All Defendants

7.  Plaintiffs originally sued Defendants on multiple theories of liability exclusively under

the laws of the State of Texas in tort or under statute as follows:[3]

    a.  Principal Agent liability [Dkt. #5-18, 19 and 20, §§3.01-3.03, 07]
    b.  Fraud by misrepresentation as well as by non-disclosure [Dkt. #5-18, 19 and 20, ¶¶6.01-6.07]
    c.  Negligent Misrepresentations [Dkt. #5-18, 19 and 20, §§6.08- 6.13]
    d.  Fraudulent Inducement [Dkt. #5-18, 19 and 20, ¶¶6.14-6.15]
    e.  Constructive Trust [Dkt. #5-18, 19 and 20, ¶¶6.16-6.18]
    f.  Civil Conspiracy [Dkt. #5-18, 19 and 20, ¶¶3.06-3.07; 6.19-6.25]
    g.  Violation of Tex. Ins. Code, art. 541. [Dkt. #5-18, 19 and 20, ¶¶6.26-6.28]
    h.  Breach of Fiduciary Duty [Dkt. #5-18, 19 and 20, ¶¶6.29-6.32]
    i.  Unjust Enrichment [Dkt. #5-18, 19 and 20, ¶6.32]
    j.  Money had and Received [Dkt. #5-18, 19 and 20, ¶6.33]

### As to Defendant Larry Cress

8.  Plaintiffs generally assert against Cress in his individual capacity claims of both

vicarious and direct liability for breaches of fiduciary duties, fraud, affirmative and by

non-disclosure, violation of Texas Insurance Code, unjust enrichment, constructive trust

and money had and received,  although the claims for the most part are limited to alleged

---

[3] Plaintiffs expressly exclude any claims under federal law. [Dkt. #5-18. 19 and 20, ¶1.01.]

actions and omissions by Cress in his performance of his duties as a member of the

Committee. Cress specifically denies that he committed any of the acts or engaged in

any of the conduct alleged by plaintiffs and expressly states that he complied with his

fiduciary duties under ERISA (Affidavit of Larry A. Cress)  Plaintiffs specifically

contend that Cress as a member of the Committee:

a.  conspired to defraud Plaintiffs;
b.  breached his fiduciary duty by concealing a Private Letter Ruling of the IRS finding that the plan did not qualify as a IRC419A plan;
c.  colluded to mislead participants by issuing false statements regarding the characteristics, operation and tax attributes of the plan;
d.  squandered $3,800,000 of a $5,000,000 plan liability policy in frivolous litigation to protect his personal interest;
e.  misappropriated and wasted the plan's legal defense fund;
f.  negligently supervised Defendant Cocks;
g.  converted Plaintiffs' assets by wrongful forfeiture of Participant policies and using the money to pay Defendant Cocks' salary and paying useless expenses;
h.  funded unmeritorious litigation;
i.  wrongfully refused to refund Participants' moneys;
j.  wrongfully forfeited Participants' moneys with the goal of collecting the money for as a surviving Participant;
k.  made wrongful expenditures for the legal fees of Defendants Bevan, Ridge, Barrow, Millennium Marketing Group LLC and Innovus;
l.  failed to acknowledge that the plan was a scam and assisting Participants to recoup their losses;
m. manipulated the plan for his personal benefit;
n. converted Plaintiffs assets by forfeiting their participation interests in the Plan;
o. Refused to refund Participants money in violation of the Plan;
p. blindly followed the Plan's lawyers' advice; and
q. caused to be wrongfully expended Plan assets.

(Dkt. 5-18, 19 and 20, ¶5.48)

9.  On 17 June 2011 Plaintiffs voluntarily dismissed their conspiracy claims against all

Defendants. [Dkt. #32]

10. Although Plaintiffs' pleadings are meandering, ponderous and inarticulate as to Cress,

after dismissing their conspiracy claims, Plaintiffs appear to limit their causes of action

against Cress to the following:

5

a. Principal-Agent liability for acts of Defendant American General Life Insurance, Indianapolis Life Insurance Company,  Life, Millennium Marketing Group, L.L.C. and Innovus Financial Services, Inc. Company [Dkt.#5-18, 19 and 20, ¶3.02-03, 07]

b. Fraud by misrepresentation as well as non-disclosure, [Dkt. #5-18, 19 and 20, ¶¶6.01-6.07]

c. Constructive Trust,  [Dkt. #5-18, 19 and 20,  ¶¶6.16-6.18]

d. Violations of Tex. Ins. Code, art 541.151, [Dkt. #5-18, 19 and 20,  ¶¶6.26-6.28]

e. Breach of Fiduciary Duty, [Dkt. #5-18, 19 and 20, ¶¶6.29-6.32]

f. Unjust enrichment, [Dkt. #5-18, 19 and 20, ¶6.32]

g. Money had and Received, [Dkt. #5-18, 19 and 20, ¶6.33]

11.  Plaintiffs seek damages, actual, exemplary and statutory, legal fees and costs.

12.  This motion extends to all remaining claims of Plaintiffs against Cress.

## PROCEDURAL HISTORY OF CASE

13.  The suit underlying this adversary proceeding was originally instituted in the 95th Judicial District Court of Dallas County, Texas on 2 May 2008. [Dkt. #2]

14.  Cress was joined as a defendant on 17 July 2009 by Plaintiffs' Fourth Amended Original Petition.

15.  On 9 June 2010 Debtor filed its voluntary petition under Title 11, Chapter 11. [Case No. 10-13528, Dkt. #1]

16.  On 9 June 2010 Debtor removed Plaintiffs' suit to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

17.  On 9 June 2011 on motion of Debtor, the suit was transferred to the United States Bankruptcy Court for the Western District of Oklahoma, Oklahoma City Division. [Dkt. #1]

18.  The Court approved Debtor's Disclosure Statement on 28 April 2011. [Case No. 10-13528, Dkt. #1248] After balloting, the Court confirmed the Debtors Third Amended Chpt. 11 Plan of Liquidation, as Modified, on 16 June 2001. [Case No. 10-13-528, Dkt. #1567]

19.  On 17 June 2011 Plaintiffs voluntarily dismissed their suit against debtor as well as

dismissed their conspiracy causes of action against all other defendants. [Dkt. #54]

## SUMMARY OF FACTS UNDERLYING MOTION

20.  On 1 November 2002 Debtor was organized as a trust under the laws of the State of

Mississippi for the purposes of establishing a ten (10) of more employer welfare

benefit plan as defined by the Employer Retirement Income Security Act of 1974 as

amended ("ERISA") and qualifying under as a section 419A(f)(6) plan under the

Internal Revenue Code of 1986 as amended. (26 U.S.C. §419A(f)(6), 29 U.S.C.

§§1002(40), 1144(b)(6)(A)). (Ex. "A," prologue, ¶8.17)

21.  The Plan and Adoption Agreement under the Plan constitute an integrated agreement

and are to be construed together. (Ex "A," ¶¶8.13, 8.17)

22.  The Plan has four principal constituents:

- the Sponsor, designated as Millennium Marketing Group, L.L.C. (Ex. "A," ¶1.25)
- the Third Party Administrator (appointed by the Sponsor – Ex. "A," ¶5.01(e))
- the Trustee (appointed by the Sponsor- Ex. "A," ¶2.01)
- the Committee (initially appointed by Sponsor with subsequent appointments made by the Committee  (Ex. "A," ¶1.05)

23.  The duties of the Committee are to (1) interpret the terms of the Plan and (2) undertake

other functions as set forth in the Plan. (Ex. "A", ¶1.05)[4]

24.  The Third Party Administrator is charged with the administration of the Plan,

excluding transactions by the Trustee. (Ex. "A," ¶ 5.01)

25.  At all times material to Plaintiffs' claims, Cress was and continues to be a limited

partner and the President of New Tech Engineering Limited Partnership ("New

Tech"). He is also the sole Manager of the limited partnership's general partner,

---

[4] The other duties and powers vary from appointing temporary trustees to reviewing and approving actions of the Plan Third Party Administrator, Sponsor and Trustee. (Ex. "A," ¶¶

Oilfield Personnel Management LLC. The limited partnership is an Employer and Covered Employer as defined respectively under ¶¶.07 and 1.12 of the Master Plan of Millennium Multiple Employer Welfare Benefit Plan (the "Plan"). Cress is an Eligible Employee as defined under §1.10 of the Plan. (Affidavit of Larry A. Cress)

26. On or about 22 December 2003, New Tech adopted the Plan. A true and correct copy of the Adoption Agreement executed between New Tech and the Plan is attached hereto as Exhibit "B." Cress as an employee of New Tech became a Participant in the Plan as defined under ¶1.17 and continues as such to date. (Affidavit of Larry A. Cress)

27. Prior to 4 January 2005, Cress had no relationship to Debtor other than being a Participant in the Plan. Similarly, Cress had no relationship to any of Plaintiffs or Defendants, other than he was an insured of Defendant American General Insurance.[5] (Affidavit of Larry A. Cress)

28. In the latter part of 2004, the Sponsor, Millennium Market Group, L.L.C., requested Cress to become an uncompensated volunteer member of the Plan Committee (the Committee for the purpose of expanding the membership of the existing Committee, and giving it greater depth in business experience and judgment. Cress agreed, and on or about 4 January 2005, he was appointed to the Committee and continued as a member of the Committee to 30 June 2011 at which time the Committee was terminated under the Debtors Third Amended Chpt. 11 Plan for Liquidation as Modified, confirmed by the Court on 16 June 2011. [Dkt.#1567], (Affidavit of Larry A. Cress)

---

2.01-03, 2.05, 2.07, 3.03(b), 3.04(i), 3.06(b-e), 4.02(a and c), 4.04(iv), 5.01(d-e), 5.02, 5.03(c-d), 5.04, 5.06-07(a), 6.01, 7.01, 7.03, 8.01-8.03, 8.06(c), 8.07), Ex. "B," ¶4E)

29. At no time has Cress, either individually or as a member of the Plan Committee, engaged in the marketing or sale of any of the insurance policies which form in part the assets of the Plan. All marketing and sales of the insurance policies were conducted by Defendants Millennium Marketing Group, L.L.C. and Ridge Insurance, Inc., either directly or through their agents. (Affidavit of Larry A. Cress) [Dkt. # 5-4 and 5. ¶5.11]

30. During his tenure as a member of the Plan, Cress had no personal communications or contacts with any of the Plaintiffs, other than with Plaintiff Danny Cranford, who for a portion of the time was also a member of the Committee, or within the course of this suit. (Affidavit of Larry A. Cress)

31. The Adoption Agreement executed by New Tech Engineering Limited Partnership is substantially the same Adoption Agreement executed by all participants, including Plaintiff, in the Plan. (Affidavit of Larry A. Cress)

32. The Plan, the Adoption Agreement and the Trust fully disclose all material information regarding the Plan, including without limitation:

   a. The whole life insurance investment (Ex. "A," ¶¶2.08, 8.10(b), Ex. "C" to Ex. "A," Ex. "B," 4E(viii))
   b. The group rating system
   c. The duty to comply with the terms of the Plan, including paying contributions and the consequences of default and forfeiture. (Ex. "A," §§3.04, 3.06(b-c), 6.01-02, Ex. "B," 4E(vi))
   d. The risks of loss and depreciation. (Ex. "A," 8.06(a), Ex. "B,4E(iv))"
   e. Limitation of liability by Sponsor, Third party Administrator, Trustee and the Committee for adequacy of benefits. (Ex. "A," ¶8.10(c))
   f. The Legal Defense Fund and its funding. (Ex. "A," 8.07, Exhibit to Ex. "B")
   g. The right to retain professionals. (Ex. "A," 5.06)
   h. No tax advice. (Ex. "B," ¶8)
   i. The right of the Participant to obtain an independent legal opinion. (Ex. "B," 16)
   j. No guaranty or warranty of value of insurance. (Exhibit to Exhibit "B") and
   k. The risk of tax consequences. (Exhibit to Ex. "B")

---

[5] Cress was solicited by Defendant Millennium Marketing Group, L.L.C. from whom he purchased the insurance policies that were assigned to the Plan. (Affidavit of Larry A. Cress)

33. The Participants in the Plan, including the Plaintiff participants, acknowledge by their execution of the Adoption Agreement their understanding of all of review or opportunity to review the Plan and their understanding of it and specifically all of the matters set forth in paragraph 32. Moreover, they acknowledge and represent that they rely upon independent tax advice regarding the adoption of the Plan. (Ex. "B,"4E, Exhibit to Ex. "B")

## THE SUMMARY JUDGMENT EVIDENCE

34. The evidence in support of Cress' Motion for Summary Judgment consists of the Amended Affidavit of Larry A. Cress, the exhibits attached hereto and the admissions by Plaintiffs contained in their pleadings and motions in both this adversary as well as the primary bankruptcy case. The Affidavit of Larry A. Cress is attached hereto as Exhibit "C."

## MEMORANDUM OF LAW

### I.    THE STANDARDS FOR SUMMARY JUDGMENT

The trial court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

In its consideration of a motion for summary judgment the trial court is required to view the evidence and make inferences in the light most favorable to the non-movant. *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1246 (10th Cir. 2010) A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Although a court shall view the evidence and draw reasonable inferences therefrom in the light most favorable to the

nonmoving party, the nonmoving party must present more than a scintilla of evidence in favor of his position. *Ford v. Pryor*, 552 F.3d 1174, 1177-78 (10th Cir. 2008)

## II. THE LAW OF THE CASE IS THAT THE PLAN IS AN ERISA PLAN

This court in the bankruptcy proceeding has adjudicated that the Plan is an ERISA plan within the context of 29 U.S.C. 1102(1). [Dkt. 977] The Debtor's Disclosure Statement having been approved by the Court [Dkt.1248], Debtor's plan of liquidation having been confirmed by the Court [Dkt.#1567], each of which are in material part predicated upon the Plan being an ERISA plan, and the time for appeal of each having expired; the ruling of the court regarding Debtor being an employee welfare benefit plan within the context of 29 U.S.C. §1002(1) is final, subsisting and non-appealable. Bank. R. 8002. "The law of the case doctrine is that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages." *U.S. v Monsisvais*, 946 F.2d 114,115 (10th Cir 1991); See also *Major v. Benton*, 647 F.2d 110, 112 (10th Cir. 1981).  Consequently, the ruling of the bankruptcy court that the Plan is an ERIA plan constitutes the law of the adversary cases.

## III.  LAW GOVERNING SUIT AND PLAN DOCUMENTS

Because the subject matter of this suit is an ERISA plan, federal law governs both the substantive and procedural law regarding ERISA matters. [29 U.S.C. §1144(a)]  Plaintiffs' suit is expressly exclusively predicated upon state causes of action [Dkt. #5-18, 19 and 20, ¶1.01). Consequently, only state law claims that are independent of ERISA plan administration are not superseded by federal law. *Woodworker's Supply v. Principal Mut. Life*, 170 F.3d 985 (10th Cir. 1999).

Regardless of the law of the place of the accrual of Plaintiffs' causes of action, the suit having been brought in the Texas courts, and Plaintiffs not having filed a motion for judicial notice of any other state law, subject to the ERISA preemption, were governed by the laws of

the State of Texas. Tex. R. Evid. 202. [Dkt. #2] Notwithstanding the removal of the suit to the federal courts, subject to ERISA preemption law, the state causes of action continue to be governed by Texas law. Subject to ERISA preemption law, to the extent that the causes of action arise out of or are derived from contract, the law governing the contract is dependent upon the circumstances of the making of the contract. The Adoption Agreement and the Millennium Master Plan by integration clauses contain choice of law provisions. The choice of law provisions provide that the construction and validity of the documents shall, to the extent not governed by federal law, be determined under the laws of the State of Mississippi. (Ex. "A," ¶8.17). Other than with regard to the substance of the contract regarding ERISA matters, federal law does not govern the formation and interpretation of the contract.

### IV. THE PLAN DOCUMENTS ARE LEGALLY SUFFICIENT AS TO DISCLOSURE

The core of Plaintiffs' claims against Defendants is that they were materially mislead by certain Defendants regarding the nature, characteristics, benefits and risks of the Plan. However, the Plan and the Adoption Agreement are unambiguous and complete both in contract as well as under ERISA. (Ex. "A" and "B") The documents completely address and disclose with legal sufficiency to any person of ordinary and common mental acuity the very matters about which Plaintiffs complain. More specifically, the documents address and describe the statutory authority upon which the Plan was organized and the benefits sought under both labor law as well as the Internal Revenue Code, that the Plan would be funded by whole life insurance purchased by the Participant upon the life of the beneficiary, that the insurance would assigned by the Participant to and owned by the Plan Trust, that the Plan Trust would be administered by a third party administrator, that if a participant failed to pay the premiums and administrative expenses of the Plan, its interest was subject to forfeiture, that the Plan would have a legal defense fund for the purpose of defending any attack on the Plan, that the expense of the legal

defense fund which would be borne by the Participants, that the Plan had a legal duty to defend its legal integrity and that the Committee would be the sole interpreter of the Plan. Moreover, each Employer participant by executing the Adoption Agreement acknowledged that the Plan was not rendering tax or legal advice, that the participant is not relying upon any constituent of the Plan, that the participant was relying upon independent advice and the risk of tax consequences of adopting the Plan and the value of the investments rested with exclusively with the Employer Participant. Finally, the Employer is expressly given the opportunity to obtain a legal opinion regarding the efficacy of the Plan. [Ex. "B," ¶16]

**Interpretation under ERISA**

As previously stated, the terms of the Plan are not ambiguous. Whether the terms in an ERISA plan are ambiguous is a question of law. *Bill Gray Enters. v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001). A term is "ambiguous if it is subject to reasonable alternative interpretations." *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991); *Mellon Bank, N.A. v. Aetna Bus. Credit Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980). To make this determination, the Court must first look to the plain language of the plan document. *In re UNISYS Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir. 1995) ("The written terms of the plan documents control. . . .")). If that language is clear, the Court must not look to other evidence. *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir. 1996) (quoting Mellon Bank, 619 F.2d at 1013 ("Our approach does not authorize a trial judge to demote the written word to a reduced status in contract interpretation. *Gourley* 248 F.3d at 218. However, "it is inappropriate to consider such [extrinsic] evidence when no ambiguity exists." *Epright v. Envtl. Res. Mgmt.*, 81 F.3d 335, 339 (3d Cir. 1996).

**Interpretation Under Mississippi Law**

Mississippi law adopts the traditional common law standards for the interpretatioand construction of contracts. "In a contract which purports to be complete, prior or contemporaneous negotiations are merged into the completed contract." *Singing River Mall Co. v. Fields, Inc.,* 599 So.2d 938, 946 (Miss. 1992). "In reviewing negotiations culminating in a contract, it is assumed that previous negotiations are merged in the final document and the contract expresses the intention of the parties." *Hoerner v. First Nat'l Bank of Jackson*, 254 So.2d 754, 759 (Miss. 1972). "[A] written contract cannot be varied by prior oral agreements." *Godfrey, Bassett & Kuykendall, Ltd. v. Huntington Lumber & Supply Co*., 584 So.2d 1254, 1257 (Miss. 1991). Plaintiffs freely agreed to their respective Adoption Agreements and to participate in the Plan.  The fact that they either misinterpreted or misunderstood the plain language of the documents, is not a basis for a court to rescind or decline to enforce contracts that are unambiguous and complete on their face. A person cannot claim misrepresentation by inducement where the documents clearly express terms and conditions to the contrary. *Mladineo v. Schmidt*, 2008-ca-02011-sct (Miss 20120); *Godfrey , et al v. Huntington Lumber*, 584 So.2d 1254 (Miss. 1991) Texas law corresponds with Mississippi law. *Town N. Nat'l Bank v. Broadus*, 569 S.W.2d 489, 493-94 (Tex. 1978). The Adoption Agreement and the Plan contain legally sufficient disclosure regarding the nature of the plan, its purposes and intents, the nature of its assets, and the legal risks to its participants and otherwise provide sufficient information reasonably necessary of a person of ordinary faculties to make an informed decision regarding participation.

## V. PLAINTIFFS' STATE COURT CAUSES OF ACTION ARE PREMPTED BY ERISA

With their dismissal of conspiracy claims against all Defendants, Plaintiffs' appear to have in effect dismissed all their conspiracy claims against Cress, other than their conspiracy claims predicated upon agency, vicarious liability and equitable claims, all of which are

addressed hereafter.  The only remaining claims of substance against Cress are limited to the performance of his duties as a member of the Plan Committee, which claims are necessarily limited to the period of 4 January 2005, the date upon which he became a member, to 9 June 2010, the date Debtor filed its voluntary petition in bankruptcy.[6]  Regardless, the only claims of substance remaining to Plaintiffs against Cress generally arise out of the administration of the Plan and specifically the performance by him of his fiduciary duties as a member of the Plan Committee. [Dkt. #5-18, 19 and 20, ¶¶5.48; Affidavit of Larry A. Cress] Consequently, the rights, benefits and remedies of Plaintiffs under the Plan are exclusively governed by federal law, more specifically 29 U.S.C. §§1132(a) and 1144(a).  *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987) See also *Woodworker's Supply*, supra.

## VI. CRESS HAS NO LIABILITY FOR THE PREPARATION OR CONTENT OF THE PLAN DOCUMENTS

Regardless of the legal sufficiency of the Plan documents, Cress' involvement with the Plan as a member of the Committee postdates the drafting of the Plan and any amendments as well as the organization of the Plan. (Affidavit of Larry Cress)  He had no involvement with the Plan, except as a beneficiary of his Employer Participant, New Tech Engineering Limited Partnership, during the period of 22 December 2002 to 4 January 2005 at which time at the request of Defendant Millennium Marketing Group, L.L.C., acting through Norman H. Bevan, Cress was requested to become a volunteer uncompensated member of the Committee, a fact not in dispute. (Affidavit of Larry Cress) The inception of the Plan was 1 November 2002 and the last Master Plan to be adopted by the Sponsor and approved by the Committee was adopted on 1 January 2005, four days prior to Cress becoming a member of the Committee. Consequently, Plaintiffs claims of liability regarding the scheme fail as to Cress.

---

[6] Under the confirmed plan of liquidation Cress is released of any claims by Plaintiffs regarding

15

## VII. CRESS WAS NOT AN AGENT OF OTHER DEFENDANTS

Plaintiffs' claims of vicarious liability under the doctrine of agency fail because Plaintiffs plead only a conclusion of agency without pleading any facts of words, conduct or agreement that Cress was either an agent or principal of Defendants American General Life Insurance, Indianapolis Life Insurance Company, Millennium Marketing Group, L.L.C. and Innovus Financial Services, Inc., or for that matter, any other person or entity that is a party to this suit, other than Debtor. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550-51 (Tex. App. – Houston [14th Dist.] 2003, no pet) See also *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex 1984). See also *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998); *NationsBank v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996). Cress expressly denies any principal-agency relationship other than he was a member of the Committee of Debtor. (Affidavit of Larry Cress)

## VIII. CRESS COMMITTED NO FRAUD OR NEGLIGENT MISREPRESENTATION

Plaintiffs' claims of Cress' liability for fraud in the inducement, both vicariously and directly, under Texas law, either by affirmative act or non-disclosure, fail on the undisputed facts. There can be no direct liability because Cress had no communications with any of Plaintiffs contemporaneous with their adoption of the Plan. (Affidavit of Larry A. Cress) He cannot be liable as a consequence of membership in the Committee because at the time of Plaintiffs' adoption of and entry into the Plan Cress was simply another beneficiary. Plaintiffs' adopted the Plan on or about 25 May 2004. Cress did not become a member of the Committee until 4 January 2005. (Affidavit of Larry A. Cress) Cress did not hold any other office or position of authority and control in the Plan and consequently bore no legal relationship, other than as a co-beneficiary, with Plaintiffs or any one of them. (Affidavit of Larry A. Cress)

---

his conduct on the Committee subsequent to the filing of the bankruptcy.

Although Plaintiffs indiscriminately comingle terminology, it appears that Plaintiffs fraud claims against Cress are actually for vicarious liability under legal theories of conspiracy or agency and are founded upon communications exclusively between various agents of Defendant insurance companies and Plaintiffs as well as the contents of the Plan documents. The conspiracy claims have been dismissed. Plaintiffs acknowledge in their pleadings that the Plan documents were prepared by Defendants other than Cress, including Bevan, Ridge, American General Insurance and Barrow. [Dkt. 5-18, 19 and 20, ¶¶5.01-5.04] Cress denies any principal-agency relationship with any other Defendant (Affidavit of Larry A. Cress) Plaintiffs plead only conclusions of principal-agent relationship between Cress and the Defendants who had direct communications with Plaintiffs in the marketing of the Plan and the sale of insurance policies without pleading any facts in support of such conclusions.

Even if the fraud claims against all defendants of Plaintiffs are not superseded by federal law, Plaintiffs' claims of fraud against Cress fail.

## A. Common Law Fraud

Cress had no communications, direct or indirect, with any of Plaintiffs. (Affidavit of Larry Cress) Consequently, Plaintiffs' claims of fraud in the inducement against Cress fail with regard to all elements under Texas law. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768,764 (Tex. 2009).

## B. Fraud by Non-Disclosure

Similarly, Cress could not have committed fraud by non-disclosure because he had no communications with any Plaintiff. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001) ). Moreover, the matters about which Plaintiffs complain were actually disclosed.

## C.  Negligent Representation

The Plan documents on their face contain legally sufficient information regarding the scope, characteristics, and benefits of the Plan with legally sufficient exculpations and disclosures regarding legal contingencies and risks and allocation of risks. (Ex. "A" and "B")

**D.  No Misrepresentation Where Contract Contradicts Asserted Misrepresentations** There can be no misrepresentation where the documents clearly contradict the misrepresentations asserted by the Plaintiffs. See *Stephens v. Equitable Life Assur. Soc'y of the United States*, 850 So.2d 78 (Miss. 2003) where the Mississippi Supreme Court holds where the plain language of a contract contradicts the allegations of misrepresentation and that "knowledge of the contents would be imputed to the signator as a matter of law." *Stephens*, 850 So.2d at 82 (¶ 13) (quoting *Cherry v. Anthony*, 501 So.2d 416, 419 (Miss. 1987))

## IX. NO BREACH OF FIDUCIARY DUTIES

There is no dispute that Cress was a fiduciary under ERISA. [Ex. "A," ¶1.14] 29 U.S.C. §1104(a) establishes the prudent man standard of care of an ERISA fiduciary. Cress adhered to and complied with the ERISA standard of care in the performance of his duties as a member of the Committee. (Affidavit of Larry A. Cress)

## X. NO CONSTRUCTIVE TRUST

Even if Plaintiffs' cause of action under Texas law for constructive Trust is not preempted by federal law, the claim fails because there is no allegation that Cress received any moneys or property from Plaintiffs, and Cress expressly denies that he ever received any money or property from any Plaintiff. (Affidavit of Larry Cress) In order to be entitled to a constructive trust, Plaintiffs must prove the following elements: (1) Breach of an informal relationship of special trust or confidence arising prior to the transaction in question, or actual fraud; (2) Unjust enrichment of the wrongdoer; and (3) Tracing to an identifiable res. See *Mowbray v. Avery*, 76

18

S.W.3d 663, 681 n. 27 (Tex.App.-Corpus Christi 2002, pet. denied). Cress never received any property of money from Plaintiffs. (Affidavit of Larry A. Cress)

## XI. NO VIOLATION OF ARTICLE 541.151 OF THE TEXAS INSURANCE CODE

Cress has not and does not engage in any insurance business activity. The express purpose of Tex. Ins. Code art 541.151 is to "regulate trade practices in the business of insurance." Article 541.151. does not apply to the activities of Cress as a member of the Committee.[7]

## XII. NO UNJUST ENRICHMENT

Even if Plaintiff's cause of action under Texas law for unjust enrichment is not preempted by federal law, the claim fails because there is no allegation that Cress received any moneys or property from Plaintiffs and Cress expressly denies that he ever received any money or property from any Plaintiff (Affidavit of Larry Cress) See *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (providing elements of unjust enrichment).

## XIII. NO MONEY RECEIVED AND HAD

Plaintiffs' claim of money received and had is a variation of their claim for unjust enrichment. *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 711 (Tex. App.-Corpus Christi 2006, pet denied) However, a fundamental element of the claim is a debt not evidenced in writing. *Amoco Prod. V. Smith*, 946 S.W.2d 162, 164 (Tex. App. El Paso 1997, no writ) Even if Plaintiff's cause of action under Texas law for money received and had is not preempted by federal law, the claim fails because there are no allegations of debt or that Cress received from

---

[7] Even if Plaintiffs have a claim under Article 541.151, it is barred by the Texas two-year statute of limitations. The statute incorporates Tex. Bus. & Com. Code., Sec. 17.46(b). Causes of action under section 17.46(b), have a two-year statute of limitations. TEX.BUS. & COM.CODE ANN. Sec. 17.565 (Vernon 1987); *see Gibbs v. Main Bank of Houston*, 666 S.W.2d 554, 558 (Tex.App. — Houston [1st Dist.] 1984, no writ).

and retains any moneys of Plaintiffs. Cress expressly denies that he ever received any money or property from any Plaintiffs. (Affidavit of Larry Cress) See also *Staats v. Miller*, 243 S.W.2d 296, 687-88 (Tex. 1951) Plaintiffs have no evidence of any of the elements of money received and had.

## XIV. CONCLUSION

Plaintiffs have no evidence to support any of their remaining claims against Larry Cress. Cress is entitled to a summary judgment that Plaintiffs take nothing by their suit and that he go hence without day with costs and such other and further relief to which the Court may determine Defendant Larry Cress is entitled at law or in equity.

WHEREFORE PREMISES CONSIDERED, Defendant prays the sufficiency of his motion for summary judgment, that after notice and hearing, Plaintiffs take nothing by their suit against Defendant and Defendant go hence without day with costs of court and such other and further relief to which Defendant Cress may show himself entitled at law or in equity.

ALTERNATIVELY, in the event that the court does not grant all the relief requested by this motion, then, pursuant to Fed. R. Civ. P. 56(g) this Court should enter an order stating any material fact, including an item of damages or other relief, that is not genuinely in dispute and treating the fact as established in the case.

Respectfully submitted,

/s/ Dale Ossip Johnson

_____

Dale Ossip Johnson, Esq.

Tex. Bar No. 10700000

THE JOHNSON FIRM
P.O. Box 427
Cedar Park, Texas 78630-0427

512-328-7764
202-595-0017 Telecopier
Email: ossip@ossipian.com

/s/ Lawrence A. G. Johnson

_____
Lawrence A.G. Johnson, Esq.
OBA # 4705

.

LAW OFFICES OF LAWRENCE A.G. JOHNSON
11910 S. 96th East Ave
Bixby Oklahoma 74008-1838
918-743-0459
918-743-0456  Telecopier
Email: tendalla@aol.com

ATTORNEYS FOR LARRY CRESS,
DEFENDANT

## CERTIFICATE OF CONFERENCE

I certify that on 24 June 2011 I conferred with Anthony L. Vitullo, Esq., one of the attorneys for Plaintiffs, regarding Defendant Larry Cress' motion for summary judgment. The motion is opposed.

/s/ Dale Ossip Johnson

_____
Dale Ossip Johnson, Esq.

## REQUEST FOR ORAL ARGUMENT

Defendant Cress requests oral argument.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date of filing, he caused a true and correct copy of the above and foregoing instrument to be electronically filed through the CM/ECF System maintained by the U.S. Bankruptcy Court for the Western District of Oklahoma and understands that said CM/ECF System generated a 'Notice of Electronic Filing,' transmitting a true and correct copy of said filing to the following counsel for parties in this proceeding who consented to such electronic service pursuant to Fed. R. Bankr. P. 7005 and 9036, Fed. R. Civ. P. 5(b)(2)(E) and 5(d)(3), and the Bankruptcy Court's General Order: Guidelines for Electronic Case Filing (eff. Mar. 22, 2006):

Anthony L. Vitullo, John L. Malesovas on behalf of Plaintiffs

lvitullo@feesmith.com, john@malesovas.com

Joseph A. Friedman, R. Keith Johnston on behalf of Defendant AVIVA Life and Annuity Company
jfriedman@krcl.com; ecf@krcl.com, kjohnston@wbsvlaw.com, mvaughan@wbsvlaw.com, dskeens@wbsvlaw.com, jstenson@wbsvlaw.com, mwoods@wbsvlaw.com

Fred A. Leibrock on behalf of Defendant Republic Bank & Trust
faleibrock@phillipsmurrah.com, knogle@phillipsmurrah.com, ecf@phillipsmurrah.com

Erin K. Lovall, G. Blaine Schwabe on behalf of Millennium Multiple Employer Welfare Benefit Plan
elovall@fslhlaw.com, pfranklin@fslhlaw.com, dskierski@fslhlaw.com, mholmes@fslhlaw.com

Robert B. Millner, William H. Hoch, Regan Strickland Beatty on behalf of American General Life Insurance Company
robert.millner@snrdenton.com, hochw@croesunlevy.com, beattyr@crowedunlevy.com, donna.hinkle@crowedunlevy.com, kerryann.wagoner@crowedunlevy.com, ecf@croedunlevy.com

Jeffery K. Work on behalf of Wilshire-Pennington Group, Inc.
jwork@gordonrees.com, lroberts@gordonrees.com, prodriquez@gordonrees.com

Additionally, a true and correct copy of the foregoing pleading was sent to the following parties in this proceeding by first class mail:

Colin R. Batchelor
1717 Main St., Ste. 5400
Dallas, TX 75201
Robert Alan Bragalone
2100 Ross Avenue, Ste. 2800
Dallas, TX 75201

Craig Brinker
LaToyia Pierce
Jennifer O'Hara Calvin
Helsee Schwartz, LL
6688 North Central Expwy, Ste. 850
Dallas, TX 75206

Karan Cimmings Ciotti
Ogden Gibson, et al.
711 Louisiana St., Ste. 1900
Houston, TX 77002

Julia Ann Dobbins
Hunter Brandon Jones
777 Main St., Ste. 3800

Fort Worth, TX 76102

John Duvall
1431 Bayshore Dr.
Kemah, TX 77565

Jay Kurtis Gray
45114 Travis St., Ste. 300
Dallas, TX 74205

Stephen C. Jackson
Lee E. Bains
Maynard Cooper & Gale, P.C.
1901 6th Avenue North
Birmingham, LA 35203

Larry E. Kelly
5400 Bosque Blvd., Ste. 302
Waco, TX 76710

Gary Kessler
2100 Ross Ave., Ste. 750
Dallas, TX 75201

Thomas A. Labuda
Christopher Sopher
233 S. Wacker Dr., Ste. 7800
Chicago, IL 60606

Glenn Russell LeMay
1900 West Loop South, Ste. 100
Houston, TX 77027

Michael P. Massad
1201 Elm Str., Ste. 5400
Dallas, TX 75270

Timothy Moore
2603 Augusta Dr., Ste. 1100
Houston, TX 77057

R. Timothy Muth
1000 North Water St., Ste. 1700
Milwaukee, WI 53202

Timothy O'Rourke
14303 Golf View Trail
Houston, TX 77509

Kathleen Peer
15 Church St.
Stuyvesant, NY 12173

Shawn W. Phelan
Alison H. Moore
700 N. Pearl, 25th Floor
Dallas, TX 75201

Matthew G. Pletcher
David A. Clark
Solutions, Inc.
1300 Post Oak Blvd., Ste. 2500
Houston, TX 77056

Jo Christine Reed
1221 Avenue of the Americas
New York, NY 10020

Joe Sibley
Camara & Sibley, l.L.P.
2339 University Blvd.
Houston, TX 77005

David R. Woodward
Cobb Martinez Woodward
1700 Pacific Ave., Ste. 4545
Dallas, TX 75201


/s/ Dale Ossip Johnson
_____
Dale Ossip Johnson, Esq.